**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KENNETH B. SMITH, <br><br> Plaintiff, <br><br> v. <br><br> THE UNIVERSITY OF CHICAGO MEDICAL CENTER, <br><br> Defendant. | No. 20-CV-03536 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION & ORDER**

Kenneth B. Smith ("Smith") alleges that the University of Chicago Medical Center ("the Medical Center") discriminated against him on the basis of his race, gender, disability, and age, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Civil Rights Act of 1866 ("§ 1981"), the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA") respectively, retaliated against him when he brought attention to this discrimination, and created a hostile work environment. The Medical Center has filed a motion to dismiss pursuant to Rule 12(b)(6), or to strike various paragraphs of the complaint pursuant to Rule 12(f) and require Smith to clarify ambiguity in his complaint pursuant to Rule 12(e). (Dkt. 8). For the reasons stated below, this motion is granted in part and denied in part.

## BACKGROUND

Smith is a 60-year-old black man who suffers from sleep apnea.[1] He is a Radiology Technologist ("Tech") by trade. Smith worked for the Medical Center's Radiology Department as a Tech for eight years, beginning in 2008. On November 6th and 7th of 2018, Smith deleted x-ray images without following proper protocol after they were accidentally added to the wrong patients' files. These incidents resulted in his suspension on December 5, 2018. Smith filed charges with the Illinois Department of Human Rights (IDHR) and with the Equal Employment Opportunities Commission (EEOC) on December 31, 2018 alleging the suspension was discriminatory and retaliatory. (Dkt. 2, Ex. B, 5–6). He also alleged that he had been subjected to harassment from May of 2018 to the present due to race, gender and age. (Dkt. 2, Ex. A, 5–6). He alerted the Medical Center that these charges were pending on January 7, 2019, and his employment was terminated the next day on January 8, 2019. After his termination, Smith was replaced by a Hispanic man in his late forties. He alleges that but for his age, race, gender, and disability his employment would not have been terminated. Following his termination, Smith filed another charge with the IDHR and the EEOC alleging retaliation on January 15, 2019. The only individuals named in Smith's EEOC charges are his supervisor Jennifer Spano-Rzepecki ("Spano") and the Radiology Department Director Monica Geyer ("Director Geyer"). (Dkt. 2, Ex. A at 4–6; Ex. B at 4–7).

---

[1] All facts referenced in this Memorandum Opinion & Order come from the complaint unless otherwise specified. Other pleadings and briefs will be referred to by their docket number, followed by the page number.

2

When Smith filed his complaint, he revisited past disputes with the Medical Center. He alleges that in January of 2016, when the Medical Center announced that he would be promoted to Lead Tech, he was denied a raise commensurate with his new responsibilities because of his race, and that he was denied an annual bonus because of his race. Between February of 2016 and March of 2018, Smith was suspended on three separate occasions. He alleges that but for his age, race, gender, and disability he would not have been suspended on any of these occasions. He also alleges that these suspensions were retaliation, meant to punish Smith for speaking out about what he viewed as discriminatory employment practices. During that time period Smith also alleges that he was subjected to a hostile work environment.

The Medical Center requests that the Court (1) dismiss certain claims pursuant to Rule 12(b)(6); (2) strike multiple paragraphs of the complaint pursuant to Rule 12(f); and (3) require a more definite statement pursuant to Rule 12(e). In support of its motion the Defendant argues that Smith failed to exhaust his administrative remedies as required by Title VII, the ADEA, and the ADA with respect to allegations of discriminatory conduct not described in the EEOC charges. Relatedly, because some of the conduct that allegedly violates Title VII, the ADEA, and the ADA predated the EEOC charges by more than 300 days, the Medical Center argues it is time barred. Similarly, Defendant asserts that some of the conduct alleged to support a § 1981 violation is time barred because it occurred more than four years before the complaint was filed. Finally, arguing that the complaint is too long and

poorly organized to give the Defendant adequate notice of which occurrences support each claim.

## LEGAL STANDARDS

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotation marks and citation omitted); s*ee also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all possible inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). A plaintiff need not plead "detailed factual allegations," but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (quotation marks and citation omitted). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007); s*ee also Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

Rule 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Malekpour v. LaHood*, No. 12 CV 6999, 2012 WL 5996375, at *1 (N.D. Ill. Nov. 30, 2012) (citing *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009); *see also* Fed. R. Civ. P. 12(f). Motions to strike are appropriate if they serve to expedite litigation. *Id.*; *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992) (allegations may be stricken "if the matter bears no possible relation to the controversy or may cause the objecting party prejudice"). District Courts have considerable discretion to strike allegations under Rule 12(f). *Malekpour*, No. 12 CV 6999, 2012 WL 5996375, at *1.

Finally, a motion for a more definite statement is appropriate "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Rule 12(e) "is designed to strike at unintelligibility rather than want of detail." *Malekpour v. LaHood*, No. 12 CV 06999, 2012 WL 5996375, at *1 (N.D. Ill. Nov. 30, 2012) (quotation and citation omitted).

## ANALYSIS

### I. Motion to Dismiss

The Medical Center asserts three different grounds for dismissing Smith's claims. First, that he failed to exhaust his administrative remedies by omitting certain claims from his EEOC charges. Second, that he was time-barred from bringing certain claims to the EEOC more than 300 days after the underlying conduct

5

occurred. And third, that he is time-barred from bringing a § 1981 claim that relied on conduct that occurred before the four-year statute of limitations.

### A. Exhaustion of Administrative Remedies

The Medical Center is correct that a plaintiff "cannot bring claims in a lawsuit [pursuant to the ADA, ADEA, or Title VII] that were not included in [his] EEOC charge." *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994) (citation omitted); *see also Gul-E-Rana Mirza v. The Neiman Marcus Group, Inc.*, 649 F. Supp. 2d 837, 854 (N.D. Ill. 2009) ("The scope of a judicial proceeding subsequent to an EEOC charge is limited by the nature of the Charges filed with the EEOC.") (quotation and citation omitted). This process is designed "both to give the EEOC and employer an opportunity to settle the dispute and to give the employer fair notice of the conduct about which the employee is complaining." *Geldon v. S. Milwaukee School District*, 414 F.3d 817, 819 (7th Cir. 2005).

A claim not *explicitly* included in an EEOC charge can be brought in federal court if "(1) the claim is like or reasonably related to the EEOC charges, and (2) the claim in the complaint reasonably could develop from the EEOC investigation into the original charges." *Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995). Claims not articulated in an EEOC charge satisfy the first prong (reasonably related) if "there is a factual relationship" between the claim and the EEOC charge. *Id.* Therefore, "the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals.*" *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) (emphasis original). To the extent that Smith's

allegations from 2016, 2017, and early 2018 do not describe the same conduct as his later allegations and do not implicate the same individuals, he failed to exhaust his administrative remedies with respect to the claims arising from those allegations.[2]

## B. Time-barred Title VII, ADA, and ADEA Claims

It is well-settled claims arising out of Title VII, ADA, and ADEA violations, they must be filed with the EEOC or the IHRC (which shares jurisdiction with the EEOC in Illinois) within 300 days.[3] *See Pruitt v. City of Chicago*, 472 F.3d 925, 927 (7th Cir. 2006); *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1121 n. 4 (7th Cir. 2009) ("In Illinois, a complainant must file a charge with the EEOC within 300 days of the alleged discriminatory act and failure to do so renders the charge untimely."); *Eiler v. McAleenan*, 770 F. App'x 271, 273 (7th Cir. 2019) (noting that, in Illinois, prior to initiating a private civil action under Title VII, ADEA or ADA, a plaintiff must file a charge with the EEOC within 300 days after the alleged unlawful practice occurred). If and when this case goes to trial, conduct that falls outside that 300-day window may be used as "background evidence in support of a timely claim." *Gul-E-Rana Mirza v. The Neiman Marcus Grp., Inc.*, 649 F. Supp. 2d 837, 852 (N.D. Ill.

---

[2] The Court need not reach the second prong of this test—whether the claim in Smith's complaint could reasonably develop from the EEOC's investigation—because the first prong is not satisfied. *See Cheek*, 31 F.3d at 500.

[3] The relevant portion of Title VII reads "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred [. . .] except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency [. . .] such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1).

2009) citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).[4] But such conduct is not actionable itself. Therefore, claims that rely on allegations that predate Smith's December 31, 2018 EEOC charge by more than 300 days (*i.e.* allegations from before March 6, 2018) are time-barred even if they were reasonably related to the allegations made explicitly in the charge. Such claims are dismissed.[5]

### C. Statute of Limitations for § 1981 Claims

Unlike Title VII, ADA, and ADEA claims, § 1981 claims need not be adjudicated by the EEOC before they are brought to federal court. There is, however, a four-year statute of limitations on these claims. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372 (2004). Therefore, Smith's § 1981 claims are partially dismissed, to the extent that they allege conduct that occurred before April 30, 2016 (four years prior to the filing date of Smith's complaint).

---

[4] Smith relies on cases regarding the admissibility of evidence pursuant to Fed. R. Evid. 404(b). (Dkt. 14, 9–10 & n. 5). Evidence regarding Smith's previous suspensions may be admissible at trial, perhaps to show motive or a plan. *See National Railroad Passenger Corp. v. Morgan*, *supra*. But they do not "[show] that he is entitled to relief," Fed. R. Civ. P. 8(a)(2). Evidentiary issues will be considered by the Court at trial.

[5] Smith's argument that allegations not contained in his EEOC charges are part of a "continuing violation" is unpersuasive. His EEOC charges assert that harassment based on age, race, gender and disability began in May of 2018. He describes no incidents of discrimination before that date in the charges, and he did not check the box indicating that this was a "continuing violation." Moreover, Smith's complaint does not allege any discriminatory conduct from August of 2016 through January of 2018, a period of 17 months. *See Carty v. Illinois Envtl. Prot. Agency*, No. 07-2214, 2010 WL 11553283, at *2 (C.D. Ill. Sept. 28, 2010); *see also National Railroad Passenger Corp. v. Morgan*, 536 US 101, 113 (2002) ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. [. . .] [E]ach discrete act starts a new clock for filing charges alleging that act. [. . .] The charge must be filed within the 180– or 300–day time period after the [discriminatory] act occurred"); *Watkins v. Chicago Housing Auth.*, 527 F. App'x 504, 506 (7th Cir. 2013) (the "doctrine of continuing violation does not revive discrete injuries falling outside of the limitations period, such as the discrimination [plaintiff] broadly describes throughout his complaint"); *Pruitt v. City of Chicago*, 472 F.3d 925, 927 (7th Cir. 2006) ("Claims about discrete employment actions [. . .] must be made within 300 days under Title VII or four years under § 1981 [. . .] [t]hat discrete acts may have been mixed with a hostile environment does not extend the time.").

**D. Dismissal of Claims**

i. <u>Discriminatory Hiring and Firing</u>

The first set of allegations in Smith's complaint describe a pattern of discriminatory hiring and firing beginning in 2016 directed towards other black men working in the Radiology Department. (Dkt. 2, ¶¶ 22–30, 51–70). This pattern included the decision to hire a white woman, Director Geyer, as Radiology Director instead of a black male candidate. During this time there was a high attrition rate among black supervisors and managers, which Smith attributes to discriminatory firings and layoffs.[6] Smith also describes a failure to publicize job openings so that qualified black candidates could apply. For example, Smith accuses Director Geyer of hiring a white candidate, Spano, to supervise the Tech staff, without posting the job opening publicly or allowing qualified (black) internal candidates to apply for the position. (Dkt. 2, ¶¶ 235–256).

Spano and Director Geyer are the individuals named in the EEOC charge, but the failure to publicize job openings and hire black male supervisors is not the kind of conduct described in Smith's EEOC charge. Therefore, Smith has failed to exhaust his administrative remedies with respect to any Title VII race or gender claims based on these allegations. Such claims based on these allegations are dismissed.

Furthermore, Director Geyer's earlier firing of other black male supervisors was not a discriminatory act that harmed Smith and is not an independently

---

[6] In 2016 there were "four black supervisors" and "one black male manager" in the Department. With his promotion, there were six black managerial employees. By January of 2019, there was "only one black male Lead Tech" (Smith himself) and "no black male managers." (Dkt. 2, 6–7). Between January of 2016 and January of 2019, Geyer "fired or laid off 11 black managers or supervisors." (Dkt. 2, 7).

9

actionable claim. So, to the extent that Smith's Title VII claims are based on the firing of these other individuals, those claims are dismissed.

ii. Failure to Provide Smith a Raise and First Suspension

The complaint then lays out the events leading up to Smith's first suspension. (Dkt. 2, ¶¶ 21–23, 32–36, 51–55, 71–178). Smith first describes tension between himself and other employees. When he was promoted to Lead Tech in March of 2016, a colleague or supervisor, John Thomas ("Thomas"), told Smith he should begin reporting poorly performing Techs so that Thomas could write them up. Smith reported three Techs for poor performance. One Tech, Abilash Shah ("Shah"), objected to taking direction from Smith, and took a leave of absence shortly thereafter. Shah's manager (and Smith's direct supervisor) Carmen Froman ("Froman") blamed Smith for Shah's absence and later retaliated against Smith.

Next, Smith describes the Medical Center's refusal to give him a raise when he became a Lead Tech in 2016, and the retaliation he faced for demanding that raise. (Dkt. 2, ¶¶ 91–95). On February 19, 2016, Smith met with Thomas and other Lead Techs to complain about their compensation. On March 22, 2016, Smith again complained to Thomas about the same issue.[7] Smith alleges that in the past, the promotion to Lead Tech had been accompanied by a raise. He asserts that the change in policy occurred because more people of color were being promoted to Lead Tech. In response to Smith's comments at this meeting, Thomas was told by an unnamed person "to retaliate" against Smith. Shah, already on bad terms with Smith, reported

---

[7] Smith filed a complaint with the NLRB about the lack of a raise in March of 2016.

10

to Thomas that he had observed Smith dozing off at work. Smith contends that what he actually saw was one of the symptoms of his sleep apnea, sleepiness during waking hours, or alternatively, that if he was dozing off it was an isolated incident attributable to a malfunctioning CPAP machine. Smith was suspended for three weeks, then reinstated with back pay.

After he returned to work on March 11, 2016, Smith was placed on probation by Director Geyer. According to Smith, the harassment continued and on March 18, 2016, a Radiology Department employee named Michel Scott ("Scott") told Smith that their supervisor, Froman, had "sent around an email telling the Radiology techs to dig up as much dirt on [Smith] as possible." (Dkt. 2, ¶ 151). Scott implicated Director Geyer, Thomas, Employee Labor Relations Consultant Diane Ouchi ("Ouchi"), and other H.R. employees in this effort. Scott said that she was instructed to interview every female Tech to see if Smith had ever harassed them, but that none reported any harassment. On March 25, 2016, Smith met with Froman and Ouchi. Ouchi advised him in this meeting that he should speak in a way that is "less black" and more like Michael Jackson, the popular singer.

Accepting these allegations as true, none of these events are described in Smith's EEOC charges. Moreover, with the exceptions of Director Geyer, none of the individuals who allegedly participated in discriminating against him or harassing him during this time period are named in the 2019 EEOC charges. According to Smith's version of events, Director Geyer's interactions with Smith at this time was limited. She administered his Performance Improvement Plan and knew that

11

Thomas and Froman were investigating allegations of poor performance on Smith's part. This is not "the same conduct" that Smith later accuses Director Geyer of in his EEOC charge. Therefore, he has not exhausted his administrative remedies with respect to these events. Moreover, all of the conduct described above occurred more than 300 days before Smith filed his 2018 and 2019 EEOC charges. To the extent that his Title VII, ADA, or ADEA claims are based on this conduct, they are dismissed.

Because these events occurred prior to April 30, 2016, the statute of limitations for any § 1981 claims based on this conduct has elapsed. Such claims are also dismissed.

iii. Suspension Due to a Computer Glitch

Next, Smith describes an April 22, 2016 incident, during which a computer glitch caused him to save x-ray images in the wrong patients' files. (Dkt. 2, ¶¶ 179–234, 254–265). Smith was suspended on April 28, 2016, but reinstated with back pay following this suspension. Shortly thereafter he was denied the opportunity to write a rebuttal of his performance evaluation and threatened with the denial of an annual bonus. He blames his then-supervisor Froman and Director Geyer for these issues, but only Director Geyer is named in his later EEOC charges. Smith did not exhaust his administrative remedies, and any Title VII, ADA, or ADEA claims are dismissed to the extent that they rely on the conduct of individuals other than Director Geyer. The Court need not reach the question of whether Director Geyer's conduct in 2016 (including her handling of the performance evaluation and her denial of an annual bonus) are sufficiently similar to the allegations in the 2018 and 2019 charges,

12

because charges arising from this conduct would in any case are time-barred by the 300-day filing window.

Likewise, the statute of limitations for any potentially race-based discriminatory conduct leading up to the April 28, 2016 suspension has lapsed, and any § 1981 claims based on that conduct are dismissed. However, § 1981 claims based on conduct that took place after April 30, 2016, such as the allegedly improper performance evaluation and the denial of a bonus, are not time-barred.

    iv. Suspension Following Allegations of Sexual Harassment

Smith then recounts H.R. investigations into alleged improprieties on his part. (Dkt. 2 at ¶¶ 266–303). First, in January of 2018, a female colleague made sexual advances towards Smith. When he rejected these advances, she made false allegations of harassment against Smith. In March of 2018 an H.R representative named Mark Lubus ("Lubus") investigated these allegations but resolved the investigation in Smith's favor and instructed the female colleague not to approach him at work. Nevertheless, Smith felt that the H.R. representative had been predisposed not to believe his side of the story. There is no cause of action here given the outcome of the investigation.

Around this time, a different (unnamed) female colleague told Smith that two male colleagues had sexually harassed and assaulted her. (Dkt. 2, ¶¶ 276–303). Smith confronted these male colleagues, and then reported them to the Medical Center administration. One was promptly fired. The man who remained at the hospital retaliated against Smith by getting another (female) colleague to complain to H.R.

13

about something he had said to her four years prior, in 2014. Lubus again investigated this claim of impropriety, and Smith claims that he did so in a way that was biased against Smith, because Smith had in the past complained to the H.R. department about racial discrimination. After a heated email exchange with Lubus, Smith was again suspended without pay in March of 2018. He was reinstated in April with back pay.

Lubus is not named in the EEOC charges, and Smith's interactions with him are not described therein. Therefore, Smith did not exhaust his administrative remedies with respect to this conduct. Any Title VII, ADA, or ADEA claims are dismissed to the extent that they rely on this conduct.[8]

These events fall within the 4-year statute of limitations for § 1981 claims, so to the extent these allegations are based on race, a § 1981 claim would not be time-barred. However, Smith is required to plead some connection between this suspension and his race. Therefore, any § 1981 claims based on this conduct are dismissed without prejudice.

v. Conduct Encompassed by the EEOC Charges

From his reinstatement in April of 2018 until his fourth suspension on December 5, 2018, Smith says that he was harassed by his new supervisor, Spano, and by Director Geyer. (Dkt. 2, ¶¶ 303–322). They disparaged his work, denied him appropriate lunch breaks, purposefully gave him more work while reducing the number of staff members who worked under him so that he would perform poorly,

---

[8] It is not clear from the complaint how much of this conduct fell outside of the 300-day window, but Smith failed to exhaust his administrative remedies in any case.

14

and created a hostile work environment. Similarly situated employees who were non-black, younger, female, and non-disabled were not treated this way. (Dkt. 2, ¶ 307). During this period of ongoing harassment, in August of 2018, Smith believes that a supervisor logged into the Medical Center's computerized record system to tamper with his work. He reported this suspicion to his direct supervisor, Spano, and she responded by having two employees work beside Smith at all times. Smith believes these employees were told to look for small mistakes and give supervisors a reason to terminate him. On October 9, 2018, he was written up for one such mistake. On November 6th and 7th, Smith deleted x-ray images without following proper protocol after they were accidentally added to the wrong patients' files. Those incidents resulted in his suspension on December 5, 2018. These events are described (albeit in general terms) in the EEOC charges, and fall within the 300-day window. Smith is therefore free bring Title VII, ADA, and ADEA claims on the basis of this conduct. These events also fall within the four-year statute of limitations for § 1981 claims, so such claims based on this conduct are not time-barred.

## II. Medical Center's Requests under Rules 12(e) and 12(f)

In light of the dismissal of (1) all claims under Title VII, ADA and ADEA that took place prior to May of 2018; (2) all claims prior to April 30, 2016; and (3) all claims after April 30, 2016 for which there is no basis to allege a violation of § 1981, the Court strikes the following paragraphs of the complaint: ¶¶ 22–30, 32–41, 53–61, 66–96, and 112–215.

The Medical Center's request to order a more definite statement pursuant to FRCP 12(e) is denied without prejudice. However, the Court does not believe the current complaint, which includes well over 350 paragraphs and then asserts that *every* paragraph supports *each* count, provides adequate notice to defendant to comply with the Federal Rules. *See In re Park*, 314 B.R. 378, 385 (Bankr. N.D. Ill. 2004) (granting a Rule 12(e) motion when "the facts incorporated by reference from other counts shed no light on the matter because they are unrelated to the allegations [in that count]"). The Court anticipates the amended complaint will clearly set forth the basis for each count.

## CONCLUSION

The Medical Center's motion (Dkt. 8) is granted in part and denied in part. Plaintiff should file an amended complaint based on the current EEOC charges by January 25, 2021.

E N T E R:

Dated: January 6, 2021

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

16